UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CIVIL ACTION NO. 18-18-DLB-EBA

B.F., by and through his mother                                    PLAINTIFF
next friend, Amelia Fite


v.                    **MEMORANDUM OPINION AND ORDER**


CARTER COUNTY BOARD                                                DEFENDANTS
OF EDUCATION, et al.

\*\* \*\* \*\* \*\* \*\*

This matter is before the Court on Defendants Kelley Moore and Carter County Board of Education's Joint Motion for Partial Summary Judgment. (Doc. # 15). The Court having reviewed the Motion and supporting documentation, determines that the Motion for Partial Summary Judgment shall be **granted** for the reasons set forth below.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

B.F. was diagnosed with juvenile rheumatoid arthritis as a preschooler, and, beginning in kindergarten, was bullied by his classmates as a result of his disability. (Doc. # 1 at ¶¶ 7, 9). The alleged bullying of B.F. included "being urinated on by other students, having his lunch eaten by other students, [and] having his crayons and pencils broken by other students, among other things." *Id.* at ¶ 9. Despite B.F.'s mother (Amelia Fite) requesting he be moved to a different classroom, "[d]efendants refused to investigate and refused to move B.F. from the class in which the bullies were tormenting him." *Id.* at ¶¶ 12-13. The bullying became particularly severe in fifth grade when John Doe 1 threw a

1

book at B.F. *Id.* at ¶¶ 14-15. John Doe 1 was required to apologize to B.F., but no further disciplinary action was taken. *Id.* at ¶ 15.

B.F. moved to East Carter Middle School in sixth grade, and B.F.'s mother informed the principal that B.F. was bullied due to his disability. *Id.* at ¶ 17. The middle school administration found his disability to be severe enough to warrant giving B.F. a key to use the school elevator. *Id.* at ¶ 18. B.F. reported an incident of bullying by John Doe 2 to the assistant principal (Defendant Kelley Moore) on January 28, 2015, but the Plaintiff alleges no investigatory or disciplinary actions were taken in response. *Id.* at ¶¶ 6, 19-20. John Doe 2 "had been throwing rocks at B.F.'s feet during school knowing that his ankles hurt due to his juvenile rheumatoid arthritis." *Id.* at ¶ 23. Even though teachers were aware of the bullying (either from being in proximity to the incident or B.F. reporting the bullying), Plaintiff alleges that nothing was done to investigate or discipline John Doe 2. *Id.* at ¶¶ 23-24. At some point, B.F. began to believe that the school would not help or protect him from bullying, so he stopped reporting the bullying incidents altogether. *Id.* at 24. The bullying allegedly, however, continued; B.F. was allegedly threatened, kicked, and teased. *Id.* at ¶ 26. "His school supplies were routinely taken by the bullies; he was forced to allow them to copy his work for better grades and forced to allow the bullies to ride the elevator with him." *Id.*

In March 2015, Ms. Fite contacted the school about creating a 504 Plan[1] for B.F., but the school never followed up to get a plan in place. *Id.* at ¶ 21. Sometime after, B.F.

---

[1] "Section 504 [of the Rehabilitation Act of 1973] makes it unlawful for a program or activity receiving federal funding to discriminate against, exclude from participation, or deny the benefits of the program or activity to an individual 'solely by reason of his or her disability.'" *M.G. ex rel. C.G. v. Williamson Cty. Schs.*, 720 F. App'x 280, 287 (6th Cir. 2018) (quoting 29 U.S.C. § 794(a)). A 504 plan is a plan designed to accommodate a disabled individual's condition(s) pursuant to Section 504 of the Rehabilitation Act. *Nixon v. Greenup Cty. Sch. Dist.*, 890 F.Supp.2d 753, 755 (E.D. Ky. 2012).

"began complaining of increased joint pains, became more emotional and exhibit[ed] physical problems of stomach aches and diarrhea at school;" his symptoms would dissipate, however, when he left school. *Id.* at ¶ 22. Plaintiff alleges that "B.F. received both physical and psychological treatment for his stomach issues and increased anxiety" as a result of being subjected to bullying at school. *Id.* at ¶ 27.

On May 27, 2015, B.F. was suspended from school for the rest of the year. *Id.* at ¶¶ 28, 30. John Doe 2 allegedly had continued to bully B.F., and B.F., fed up with the bullying and lack of action from administrators, "threatened to shoot the bully [John Doe 2] if [John Doe 2] continued to harass [B.F.]." *Id.* at ¶ 29. John Doe 2 reported the threat to the school administration, which investigated the incident and suspended B.F. *Id.* at ¶ 30. Despite B.F. informing Defendant Kelley Moore that "John Doe 2 had threatened to kill him first and had harassed and bullied him throughout the year," the school appeared to take no action against John Doe 2 and failed to respond to Ms. Fite's numerous attempts to contact the administration regarding the situation. *Id.* at ¶¶ 31-33.

Ms. Fite filed a complaint with the U.S. Department of Education Office for Civil Rights (OCR) alleging disability discrimination against B.F. by the school. *Id.* at ¶ 34. OCR found that Carter County Board of Education ("Carter County BOE") "failed to properly respond to reports of disability-based harassment," "did not conduct an investigation at all on the complaints of disability-based harassment by Plaintiff," and "failed to comply with grievance procedure required under Section 504 and Title II." *Id.* at ¶¶ 35-37. OCR also mandated that Carter County BOE "correct its policies and procedures to provide the required and necessary grievance procedures for resolving claims of disability based discrimination to provide for prompt and equitable resolution of

complaints of harassments." *Id* at ¶ 38. In August 2017, following completion of the OCR investigation, Carter County BOE finally began to investigate B.F.'s bullying complaints. *Id.* at ¶ 39.

This case was filed on February 1, 2018 on behalf of B.F., a minor, by and through Amelia Fite. (Doc. # 1 at ¶ 4). Ms. Fite is serving as his next friend for the purposes of this lawsuit. *Id.* The suit alleges claims against Kelley Moore, Vice Principal at East Carter Middle School, and the Carter County BOE. (Docs. # 1 at ¶¶ 5-6 and 9 at 1). Plaintiff alleges seven claims in the Complaint—(1) a § 1983 claim, (2) a claim under § 504 of the Rehabilitation Act, (3) a claim under § 344 of the Kentucky Civil Rights Act, (4) an equal-protection claim under the Fourteenth Amendment, (5) a common-law negligence claim against Carter County BOE, (6) a common-law negligence claim against Moore, and a (7) negligent training and supervision claim. (Doc. # 1 at ¶¶ 40-93).

Defendants filed their Answer on February 23, 2018, (Doc. # 7), and jointly moved for partial summary judgment on the two negligence claims and the negligent training and supervision claim (claims 5-7) as well as any resulting claims for punitive damages (collectively "common-law claims") on June 5, 2018. (Doc. # 15). B.F. having filed a timely response to the Motion on June 26, 2018, (Doc. # 20), and the Defendants having replied on July 10, 2018, (Doc. # 22), the Motion is now ripe for the Court's review.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is granted when there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one "that might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, the role of the judge is to review the

evidence and "determine[] whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. If no such issue of material fact exists, summary judgment may be granted if the moving party is "entitled to [such] judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court must view any evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Hamilton Cty. Educ. Ass'n v. Hamilton Cty. Bd. of Educ.*, 822 F.3d 831, 835 (6th Cir. 2016).

## B. Choice of Law

Under the doctrine of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), when federal courts consider state-law claims under diversity or supplemental jurisdiction "the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Guar. Tr. Co. v. York*, 326 U.S. 99, 109 (1945). In other words, "federal courts are constitutionally obligated to apply [substantive] state law to state claims." *Felder v. Casey*, 487 U.S. 131, 151 (1988) (citing *Erie R.R. Co.*, 304 U.S. at 78-79).[2]

The Sixth Circuit has found that, in the context of immunity provisions, "[w]hether, and to what extent, the defendants are immune from suit on the plaintiffs' pendent state law claims is a question that turns on state law, as does the appealability of the denial of immunity of the state law claims." *Cullinan v. Abramson*, 128 F.3d 301, 312 (6th Cir.

---

[2] *Erie* requires federal courts considering state-law claims, either under diversity or supplemental jurisdiction, to apply state substantive law and federal procedural law. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).

5

1997). *See also Shadrick v. Hopkins Cty. Ky.*, 805 F.3d 724, 744-51 (6th Cir. 2015) (applying state immunity law to pendent state claims); *Brent v. Wenk*, 555 F. App'x 519, 535-37 (6th Cir. 2014) (same); *Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 407 (6th Cir. 2007) (finding that "[i]n a diversity case or a federal question action involving pendent state claims, we must look to state immunity law to determine whether a denial of immunity based on state law is appealable"); *J.B.F. v. Ky. Dep't of Educ.*, No. 5:15-CV-33-REW, 2016 WL 3167546, at * 7 (E.D. Ky. June 3, 2016) (collecting cases where state immunity law has been applied to state claims in the Sixth Circuit).

The case before the Court raises both federal and state claims, though the pending motion asks the Court to consider the common-law claims brought against Carter County BOE and Moore, in her official capacity. *Compare* (Doc. # 1), *with* (Doc. # 15). As the claims at issue are state claims, the Sixth Circuit requires the Court to apply Kentucky substantive law, including Kentucky law regarding immunity. *See* discussion *supra*.

**C.     Governmental Immunity**

Under Kentucky law, state governmental agencies are immune from tort liability when performing governmental, rather than proprietary, functions. *Shadrick*, 805 F.3d at 745 (citing *Yanero v. Davis*, 65 S.W.3d 510, 519 (Ky. 2001)). Officers or employees of a government agency are similarly entitled to immunity if sued in official or representative capacities. *Id.* at 522.

*1.     Carter County Board of Education*

"When a plaintiff 'fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion.'" *Purefide v. Thompson*, 12-cv-66-GFVT, 2014 WL 4661955, at *2 (E.D. Ky. Sept. 18, 2014) (quoting *Scott v. Tennessee*, 878 F.2d 382, at *2 (6th Cir. 1989) (unpublished table

decision)). Here, Plaintiff failed to respond to Defendants' arguments regarding immunity for Carter County BOE. (Doc. # 20). Thus, the Court deems that B.F. waived opposition to this portion of the Motion, and summary judgment may be granted for Carter County BOE on the common-law claims at issue. As immunity for Carter County BOE impacts the immunity analysis for its employee, Defendant Moore, however, the Court must still address the merits of Carter County BOE's argument that it is entitled to governmental immunity.

Local school boards are agencies of state government that are "entitled to governmental immunity" so long as they are performing governmental functions, rather than proprietary functions. *Yanero*, 65 S.W.3d at 527. "Thus, [a school board] can only be sued in a judicial court for damages caused by its tortious performance of a proprietary function, but not its tortious performance of a governmental function, unless the General Assembly has waived its immunity by statute."[3] *Nixon*, 890 F.Supp.2d at 762. Proprietary functions are "non-integral undertakings of a sort private persons or businesses might engage in for profit." *Breathitt Cty. Bd. Of Educ. v. Prater*, 292 S.W.3d 883, 887 (Ky. 2009).

The Kentucky Supreme Court has found that "education is an integral aspect of state government and that activities in direct furtherance of education will be deemed governmental rather than proprietary." *Id.* That Court has previously interpreted "direct furtherance of education" liberally and found activities that a reasonable person might deem proprietary—providing interscholastic athletics, managing dormitory housing for

---

[3] Here, there is no argument, evidence, or suggestion to indicate that Carter County BOE waived immunity by statute. *See* (Docs. # 1, 12, 20 and 22). Further, the Carter County BOE has previously been granted governmental immunity. *Barrett v. Carter Cty. Bd. of Educ.*, No. 2002-CA-001393-MR, 2003 WL 22681444, at *1 (Ky. Ct. App. Nov. 14, 2003).

university students, and providing housing to a night watchperson—to be governmental functions because each contributes to educational purposes. *See id.* at 887-88 (collecting cases). In those cases, the Kentucky Supreme Court found that educational institutions sued for alleged torts were immune when a student was assaulted by non-students in a university dormitory, *Autry v. W. Ky. Univ.*, 219 S.W.3d 713, 714, 718 (Ky. 2007), a player was injured during batting practice before a high school baseball game, *Yanero*, 65 S.W.3d at 517, 527, and when a visitor was injured in lodging used by the school's night watchperson. *Breathitt Cty. Bd. of Educ.*, 292 S.W.3d at 885, 887-88.

Given the Kentucky Supreme Court's expansive approach to defining governmental functions, there is no question that the activities giving rise to the alleged claims here are governmental versus proprietary. Here, Plaintiff alleges that the Defendants did not investigate and respond to the bullying and harassment to which B.F. was subjected during school. *See*, Part I, *supra*. Nothing in the Complaint suggests that Carter County BOE was performing a proprietary or business function when these allegations arose. *Id.* Rather, Carter County BOE was performing its core governmental function—educating students. *Id.* Plaintiff alleges that Carter County BOE and one of its employees, Moore, failed to take necessary action to protect B.F. during school. Sister courts in this district have found governmental immunity to apply in cases with similar facts. *See H.C. v. Fleming Cty. Ky. Bd. of Educ.*, No. 5:16-CV-235-DCR, 2017 WL 4249546, at *11 (E.D. Ky. Sept. 25, 2017) (dismissing state common-law claims on the grounds of governmental immunity, in a case where a plaintiff accused the school of discriminating against her allegedly-bullied son); *C.K.*, 839 F.Supp.2d at 885 (finding that when a teacher molested a student the teacher and Board of Education were "immune

8

from official-capacity claims on state law grounds" because the teacher "was employed in a governmental function—teaching school" when the alleged conduct occurred). Thus, the Court finds that Carter County BOE is entitled to governmental immunity on the common-law claims alleged here because the alleged misconduct took place in a school setting, by a school employee, and during activities which were in furtherance of B.F.'s education.

### 2. Kelley Moore

"Individuals who are sued in their *official capacities* as government employees are also entitled to governmental immunity." *Jenkins Indep. Schs. v. Doe*, 379 S.W.3d 808 810 (Ky. Ct. App. 2012) (emphasis added). Such an employee is immune from liability if his or her employer is entitled to governmental immunity. *C.K.*, 839 F.Supp.2d at 885.

Here, Plaintiff has sued Defendant Moore in both her official and individual capacities. (Doc. # 9 at 1). The Motion pending before the Court, however, asks only to dismiss the common-law claims against Defendant Moore in her *official capacity*. (Docs. # 15-1 at 1 and 22 at 4-5). Defendant Moore is an employee of Carter County BOE, an entity entitled to governmental immunity. *See* Part II.C.1 *supra*. Accordingly, Defendant Moore, in her official capacity, is entitled to governmental immunity against the common-law claims at issue in this Motion. *C.K.*, 839 F.Supp.2d at 885. Therefore, summary judgment shall be **granted** as to Plaintiff's common-law claims, which will be dismissed against Defendant Moore in her official capacity.

Plaintiff's arguments, which focus on the distinction between ministerial and discretionary functions, do not change this outcome. The issue of whether functions are ministerial or discretionary impact the Court's determination of qualified immunity—

immunity that only applies to immunize individuals sued in their individual capacities. *Ritchie v. Turner*, 2017-SC-000157-DG, 2018 WL 5732836, at *4 (Ky. Nov. 1, 2018); *Yanero*, 65 S.W.3d at 521-23; *Jenkins*, 379 S.W.3d at 311-12. As the current motion only addresses claims versus Defendant Moore in her *official capacity*, Plaintiff's arguments have no bearing. Summary judgment on official-capacity claims on the basis of governmental immunity "does not affect the plaintiff['s] ability to proceed with individual-capacity claims." *C.K.*, 839 F.Supp.2d at 885. Thus, all of Plaintiff's claims against Moore, in her individual capacity, including the common-law claims, remain, despite the Court granting the pending Motion. Plaintiff's claims against Carter County BOE and Moore under § 1983, § 504 of the Rehabilitation Act, § 344 of the Kentucky Civil Rights Act, and the Fourteenth Amendment also remain.

## III.   CONCLUSION

Accordingly, as Defendants Carter County BOE and Moore, in her official capacity, are found to be entitled to governmental immunity on the common-law claims brought against them,

**IT IS ORDERED** that Defendants' Joint Motion for Partial Summary Judgment (Doc. # 15) is **GRANTED**.

This 4th day of December, 2018.



Signed By:
*David L. Bunning*  DB
United States District Judge

K:\DATA\ORDERS\Ashland Civil\2018\18-18 Order on PMSJ.docx